```
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
--------------------------------------- X

LINDA WALDEN

                    Plaintiff,          **MEMORANDUM AND ORDER**

    -against-                            05-CV-3600 (KAM)(RER)

LORCOM TECHNOLOGIES, INC.

                    Defendant.
-------------------------------------

LORCOM TECHNOLOGIES, INC.
                    Counter-Plaintiff,


    -against-

LINDA WALDEN, MILTON BARBAROSH, ELI
WEINSTEIN and ROBERT KOHN

--------------------------------------- X
```

**MATSUMOTO, United States District Judge:**


Presently pending before the court is third party defendant Milton Barbarosh's ("Barbarosh") motion to dismiss third party plaintiff Lorcom Technologies, Inc's. ("Lorcom") complaint and plaintiff and third party defendant Linda Walden's ("Walden") cross-claim for lack of personal jurisdiction. For the reasons that follow, Barbarosh's motion is granted.

## I.    BACKGROUND

Walden, a Florida resident, sued Lorcom Technologies, a Delaware corporation that "previously had a place of business

in Kings County[,] New York" (Lorcom Ans. ¶ 2) alleging that
Lorcom failed to make payment on a promissory note.  (<u>See,
generally</u>, Walden Compl.)  The note was executed on December 2,
2002 by Lorcom in the sum of $500,000 to Eli Weinstein.  (Walden
Compl. Ex. A: Promissory Note.)  The note was subsequently
assigned by Weinstein to Stenton Leigh Business Resources, in
which Barbarosh has an interest, and then by Stenton Leigh to
Walden.  (Walden Compl. Ex. B: Assignment to Walden.)  Walden
sought payment on the note from Lorcom.  (Walden Compl. ¶¶ 8-
11.)  When payment was refused, Walden brought suit against
Lorcom on June 7, 2005 seeking the principal sum of the note and
interest.  (Walden Compl. ¶ 12.)

On March 28, 2007, Lorcom filed its Answer and
asserted third party claims against Milton Barbarosh, a Florida
resident, as well as Weinstein, a New Jersey resident, and other
individuals, all Florida residents, allegedly affiliated with
Barbarosh.  (Lorcom Ans. ¶¶ 13-19, 24-62.)  Lorcom additionally
asserted a counter-claim against Walden.  (Lorcom Ans.)  Walden
subsequently filed cross-claims against the third party
defendants, alleging that if Lorcom prevails against the third
party defendants she is entitled to recover the sum she would
have recovered from Lorcom from the third party defendants.

(<u>see, generally</u>, Walden Ans.)[1]  In anticipation of this motion to dismiss the court permitted discovery on matters relating to the issue of jurisdiction.[2]

In its third party claims, Lorcom alleges that Barbarosh is "loosely affiliated" with a "group of self-proclaimed financiers" called the "Aaron Group". (Lorcom Ans. ¶ 25.)  Barbarosh asserts that he "never had any ownership interest nor [has he] ever had any managerial control over [the Aaron Group's] operations," and that he "was not and [has] never been affiliated with Aaron Investments Group Inc./"Aaron Group" at any time." (Barbarosh Decl. of 8/20/08 ¶ 3 and 9/11/08 ¶ 3.) Lorcom entered into a letter agreement on April 2, 2002 with the Aaron Group, to effectuate a reverse merger of Lorcom. (Lorcom Ans. ¶ 25.)  Pursuant to the April 2002 letter agreement, Lorcom was to pay a non-refundable fee of $10,000 to the Aaron Group and an additional fee of $200,000 to a third party banking entity. (Doiban Decl. Ex. 4: Letter Agreement of 4/2/2002.) Pursuant to the April 2002 letter agreement, upon the execution

---

[1]     Plaintiff Walden makes no additional allegations regarding whether there is personal jurisdiction over Barbarosh and denies knowledge of substantially all allegations in Lorcom's Answer relating to the third party defendants.  Because the following analysis applies equally to the third party claim and the cross-claim, the court will point out any differences in its analysis as they arise.

[2]     Barbarosh's counsel asserts in the Memorandum of Law in Support of the Motion to Dismiss that Lorcom never actually took discovery.  Pursuant to the court's Minute Entry of 12/01/08, discovery has closed generally.

of a letter of intent ("LOI"), Lorcom was supposed to pay the
Aaron Group an additional non-refundable fee of $15,000 and an
additional fee of $200,000. (Doiban Decl. Ex. 4, Letter
Agreement of 4/2/2002.) Although the LOI referenced in the
April 2002 letter agreement was never consummated (Lorcom Ans. ¶
27.), Lorcom made a series of payments totaling $425,000 to the
individual Aaron Group partners. (Lorcom Ans. ¶ 26.) These
payments included a payment of $100,000 that was made to Shulman
& Assoc., an entity allegedly affiliated with Barbarosh, on
April 3, 2002. (Lorcom Ans. ¶ 26.) Another payment of $100,000
was made to Barbarosh on April 5, 2002. (Lorcom Ans. ¶ 26.) A
$25,000 payment was made to the Aaron Group on April 25, 2002[3],
and a payment of $200,000 was made to Weinstein on April 26,
2002. (Lorcom Ans. ¶ 26; Doiban Decl. ¶ 10.) Because the April
2, 2002 letter agreement was never consummated, the Aaron Group
members returned most of Lorcom's deposit at some time between

---

[3]     Doiban's Declaration indicates that $10,000 of the $25,000
payment to the Aaron Group on April 25, 2002 was non-refundable.
(Doiban Decl. ¶ 9.) However, there appears to be some
inconsistency because Doiban later states that the monies were
returned "in the same way in which it was tendered . . . . less
twenty-five thousand dollars ($15,000 of which was a 'non-
refundable fee')." (Doiban Decl. ¶ 13.) The April 2002 letter
agreement indicates that a non-refundable fee was to be paid
initially in the sum of $10,000 and later, upon execution of the
letter agreement, an additional non-refundable fee was to be
paid in the sum of $15,000. (Doiban Decl. Ex. 4: Letter
Agreement.) The court concludes that the entire $25,000 was a
non-refundable fee, despite the LOI never being executed, and,
therefore, the condition precedent for the payment of the
additional $15,000 was never satisfied.

December 2002 and early 2003, after Lorcom wrote a letter on December 11, 2002 indicating that it had made payments of $425,000, but that no services had been provided by the Aaron Group as of that date. (Lorcom Ans. ¶¶ 27-28; Doiban Decl. ¶ 13.)

Lorcom additionally alleges that it executed a promissory note to third party defendant Weinstein on December 2, 2002 for $500,000. (Lorcom Answer ¶ 32; Walden Compl., Ex. A.)[4] Lorcom alleges that it never received $500,000 from Weinstein. (Lorcom Ans. ¶ 34.) Weinstein subsequently assigned this note to Stenton Leigh Business, Barbarosh's company. (Barbarosh Decl. of 8/20/08 ¶ 7.) The promissory note was then assigned to Walden. (Barbarosh Decl. of 8/20/08 ¶ 7.) Lorcom alleges that the note and the subsequent assignments of it were fraudulent and part of a conspiracy, of which Barbarosh was a part, to extract funds from Lorcom. (Lorcom Ans. ¶¶ 32-39.)

Lorcom alleges that Barbarosh, thereafter, prepared a letter of intent on February 28, 2003 (2003 LOI) in which he named himself a contact person. (Lorcom Ans. ¶¶ 30-31; Doiban Decl. Ex. 6.) The 2003 LOI contemplates a reverse merger of Lorcom. (Doiban Decl. Ex. 6.) Barbarosh points out that this

---

[4] The court notes that Lorcom's allegations as set forth in the complaint do not mention the date of the promissory note at issue and are not in chronological order, creating the impression that Barbarosh was involved in the making of the promissory note. (Lorcom Ans. ¶¶ 29-34.)

2003 LOI was never executed and bound no one, including Lorcom. (Barbarosh Decl. of 9/11/08 ¶ 5.) Lorcom agrees that the 2003 LOI was never consummated and existed only in draft form. (Doiban Decl. ¶ 5, Ex. 6.)

It is noted that Lorcom makes no allegations regarding where any of these transactions transpired, or where any injury was incurred. In fact, Lorcom alleges that it is incorporated in Delaware, without mention of its ties to New York beyond asserting that it "previously had a place of business in Kings County[,] New York." (Lorcom Ans. ¶ 2.) Indeed, Lorcom's president and COO/CEO, Doiban, provides only a P.O. Box in Brooklyn, New York as an address. (Doiban Decl. ¶¶ 3,4, Ex. 2.) Lorcom's third party complaint also specifically states that Barbarosh is a resident of Florida.[5]

## II. **DISCUSSION**

Third party defendant Milton Barbarosh filed a Rule 12(b)(2) motion to dismiss for lack of personal jurisdiction. "'When responding to a Rule 12(b)(2) motion to dismiss for lack of personal jurisdiction, the plaintiff bears the burden of

---

[5]    Lorcom's Opposition Brief does state that the agreement, note, and LOI were to be performed in New York and that Barbarosh transmitted these documents to Lorcom in New York. Lorcom states that Barbarosh received funds directly from Lorcom in New York. Lorcom does not cite to affidavits in asserting these facts; however, the note and letter agreement are addressed to Lorcom at a New York City, New York address. (Compl. Ex. 1; Doiban Decl. Ex. 4.)

establishing that the court has jurisdiction over the defendant.'" <u>DiStefano v. Cardozzi North America, Inc</u>. 286 F.3d 81, 84 (2d Cir. 2001) (quoting <u>Bank Brussels Lambert v. Fiddler Gonzalez & Rodriguez</u>, 171 F.3d 779, 784 (2d Cir. 1999)).  When the "court relies on pleadings and affidavits, rather than conducting a 'full-blown evidentiary hearing,' the plaintiff need only make a *prima facie* showing that the court possesses personal jurisdiction over the defendant." <u>Id.</u>  The pleadings and affidavits are viewed in the light most favorable to the plaintiff, with all doubts resolved in the plaintiff's favor. <u>Id.</u>  In this case, the parties were ordered to conduct jurisdictional discovery prior to briefing the motion.  As a result, "the plaintiff's *prima facie* showing, necessary to defeat a jurisdiction testing motion, must include an averment of facts that, if credited by the trier, would suffice to establish jurisdiction over the defendant." <u>Ball v. Metallurgie Hoboken-Overpelt, S.A.</u>, 902 F.2d 194, 197 (2d Cir. 1990).[6]

---

[6]    As previously noted, the parties were permitted to conduct discovery on this jurisdictional issue but Lorcom never took discovery.  In <u>Volkswagenwerk v. Beech Aircraft Corp.</u>, 751 F.2d 117 (2d Cir. 1984), the Second Circuit held that because the court had permitted sufficient discovery, the plaintiff was held to a preponderance of the evidence standard.  However, since <u>Volkswagenwerk</u>, the Second Circuit has held that when a court relies solely on affidavits, rather than an evidentiary hearing, the plaintiff need only make a <u>prima facie</u> showing, but such showing must be supported by the facts.  <u>Ball</u>, 902 F.2d at 197. Because Lorcom has not made a <u>prima facie</u> showing of personal jurisdiction over Barbarosh, the court need not apply this

Personal jurisdiction in a diversity case is established pursuant to the law of the state in which the court sits. <u>Volkswagenwerk Aktiengesellschaft v. Beech Aircraft Corp.</u>, 751 F.2d 117, 120 (2d Cir. 1984). Even if jurisdiction is established pursuant to the state's long arm statute, the court must assess whether assertion of jurisdiction comports with the due process clause. <u>Metro. Life Ins. V. Robertson-Ceco Corp.</u>, 84 F.3d 560, 567 (2d Cir. 1996). New York's long-arm statute, sections 301 and 302 of New York's Civil Practice Law and Rules, allows a New York court to exercise jurisdiction over a non-domiciliary. Lorcom principally relies on N.Y.C.P.L.R. § 302(a)(1) and (3) (2008) as a basis for jurisdiction. (Lorcom Mem. in Opp'n. at pp. 12-14.) The court will also consider whether there is personal jurisdiction pursuant to Section 301 because Barbarosh makes the additional argument that Section 301 is not satisfied. Because the court holds that there is no long-arm jurisdiction over Barbarosh, the court need not reach the constitutional issue.[7]

---

heightened standard, despite Lorcom's opportunity to take discovery.

[7]    It is unclear from the pleadings whether Lorcom's third party claim is against Barbarosh in his individual capacity or as an agent of his corporation, Stenton Leigh Business. Regardless, jurisdiction is absent and the court's analysis is applicable to either scenario. <u>Laufer v. Ostrow</u>, 55 N.Y.2d 305 (1982) (discussing "doing business" standard); <u>SMS Mktg. & Telecoms. v. H.G. Telecom.</u>, 949 F. Supp. 134, 141-142 (E.D.N.Y. 1996).

## A. Jurisdiction Under N.Y. Civil Practice Rule § 301

Lorcom vaguely argues that Barbarosh is subject to personal jurisdiction in New York State because he was "doing business" here. (Lorcom Opp'n Mem. p. 12.) [8] Pursuant to N.Y.C.P.L.R. § 301, New York courts have jurisdiction over a non-resident if the non-resident is determined to be "doing business" in New York. Once the non-resident meets the standard for "doing business", the state has jurisdiction over the non-resident regardless of whether the action sued upon is related to the business within the state. Tauza v. Susquehanna Coal Co., 220 N.Y. 259, 268 (1917). A New York court does not have jurisdiction over an officer in his or her individual capacity if the officer is "doing business" on behalf of a corporation. Laufer, 55 N.Y.2d at 313. An officer of a corporation does not subject himself or herself to personal jurisdiction under § 301 unless the officer was *doing business* in the state in his or her *individual capacity*. Laufer, 55 N.Y.2d at 310; see SMS Mktg. & Telecoms., 949 F. Supp. at 144-45; Ontel Prods. v. Project Strategies Corp., 899 F. Supp. 1144, 1148 (S.D.N.Y. 1995); Lancaster v. Colonial Motor Freight Line, Inc., 581 N.Y.S.2d 283, 288 (N.Y. App. Div. 1992). Therefore, for New York courts to have jurisdiction over Barbarosh pursuant to N.Y.C.P.L.R. §

---

[8] The court notes that Lorcom does not cite specifically to N.Y.C.P.L.R. § 301.

301, Lorcom must allege that he was "doing business" in New York in his individual capacity.

Lorcom makes no allegation that Barbarosh was doing business in his individual capacity. In fact, Lorcom alleges facts that suggest Barbarosh was acting as an agent of Stenton Leigh Group, Inc., a Florida corporation. However, reading Lorcom's third party complaint in the light most favorable to Lorcom and assuming that it alleges Barbarosh was acting in his individual capacity, the complaint still fails to establish that Barbarosh was "doing business" in New York for purposes of establishing jurisdiction pursuant to Section 301.

To satisfy the "doing business" standard, "there is no precise test of the nature or extent of the business that must be done," Tauza, 220 N.Y. at 267 (1917). However, "New York courts have generally focused on the following indicia of jurisdiction: the existence of an office in New York; the solicitation of business in New York; the presence of bank accounts or other property in New York; and the presence of employees or agents in New York," Landoil Resources Corp. v. Alexander & Alexander Services, Inc., 918 F.2d 1039, 1043 (2d Cir. 1990) (citing Hoffritz For Cutlery, Inc. v. Amajac, Ltd., 763 F.2d 55, 58 (2d Cir. 1985)). See, e.g., American Transit Ins. Co. v. Hoque, 846 N.Y.S.2d 91 (N.Y. App. Div. 2007). The analysis is necessarily fact-sensitive and the court must

"analyze a defendant's connections to the forum state 'not for the sake of contact-counting, but rather for whether such contacts show a continuous, permanent and substantial activity in New York.'" <u>Landoil Resources Corp</u>. 918 F.2d 1039 at 1043 (citation omitted).

Despite the opportunity for discovery, Lorcom proffers no evidence of any presence of accounts, or an office or property in New York that Barbarosh, or his employees or agents, hold in New York. (<u>See, e.g.</u>, Def. Reply Mem. pp. 6-7; Lorcom Ans. ¶ 21; Def.'s Mot. to Dismiss p. 5.) Lorcom proffers two instances of "solicitation" by Barbarosh in support of establishing jurisdiction. [9] However, "[s]olicitation of

---

[9] Even assuming that solicitation alone can satisfy "doing business" for purposes of personal jurisdiction, the evidence that Barbarosh solicited business in New York is not immediately apparent from the pleadings or affidavits. Lorcom argues that Barbarosh solicited business through the internet because Barbarosh has posted biographical information about himself and the various corporations he works for on a number of websites including zoominfo.com, bizbuysell.com, and various company websites he is affiliated with. (Opp'n. Mem. p. 9, Ex. 8, 9, 16.) Nonetheless, Lorcom does not identify which of the internet postings by Barbarosh solicit business. Whether Barbarosh's contact with New York residents via the internet constitutes "solicitation" is an unsettled area of the law. The court in <u>Citigroup Inc. v. City Holding Co.</u>, 97 F. Supp. 2d 549 (S.D.N.Y. 2000) addressed the issue of whether contacts via the internet were "solicitations" and concluded they did not satisfy general jurisdiction under N.Y.C.P.L.R. § 301, but did satisfy specific jurisdiction under N.Y.C.P.L.R. § 302. The website used in that case, however, facilitated interaction between the company and the user. The website enabled "customers in New York to apply for loans on-line . . . and offer[ed] the opportunity to "chat" online with a City National

business alone will not justify a finding of corporate presence in New York with respect to a foreign manufacturer or purveyor of services." <u>Laufer</u>, 55 N.Y.2d at 310; <u>see also</u> <u>Elish v. St. Louis Southwestern Ry. Co.</u>, 305 N.Y. 267, 269 (1953) ("mere solicitation of business by a foreign corporation within this State may be insufficient to make it subject to the jurisdiction of our courts, nevertheless, '*solicitation . . . plus* some additional activities there are sufficient to render the corporation amenable to suit. . . .'") (emphasis added) (citing <u>Int'l Shoe Co. v. Washington</u>, 326 U.S. 310, 314 (1945); <u>Green v. Chicago, Burlington & Quincy Ry.</u>, 205 U.S. 530, 533-534 (1907); <u>Yeckes-Eichenbaum, Inc. v. McCarthy</u>, 290 N.Y. 437, 443 (1943)); <u>Tauza v. Susquehanna Coal Co.</u>, 220 N.Y. 259, 266 (1917) (a defendant's "systematic and regular" solicitation made it

---

representative.  Prospective customers [could] also e-mail City Lending with home loan questions and [were] promised a response from an 'online representative . . . in less than an hour.'" <u>Id.</u> at 570.  Barbarosh is distinguished from <u>Citigroup</u> because none of the Barbarosh-related company websites or the other websites offer the opportunity for greater interactivity than an email without promise of a return communication.  Therefore, it is clear that the defendant has not solicited any business via an interactive website.  Additionally, Lorcom argues that Barbarosh was soliciting business by lecturing at a seminar at New York's Hilton.  Even if Barbarosh's lecture could be considered "solicitation of business," it was only a one-time appearance, for twenty minutes, and a part of a much longer conference.  (Lorcom's Opp. Ex. 7.)  Therefore, Lorcom does not establish a continuous, permanent presence in New York by Barbarosh.

amenable to suit in New York State because it maintained an office in New York and had agents in New York).

Lorcom points to additional activities, none of which fall into a category previously considered relevant by the courts in determining whether a defendant is "doing business" in New York.  Nevertheless, Lorcom argues that they provide a basis for jurisdiction.  First, Lorcom proffers unrelated criminal proceedings against Barbarosh and others related to the alleged overvaluing of New York hedge fund assets.  These actions are pending in the United States District Court for the District of Florida.  (Israel Decl., Ex. 1, 5, 6.)  Lorcom cites to the criminal indictment of the defendant in the action and to an article about the criminal proceedings.  The indictment alleges the following engagements defendant had with an individual in New York: October 21, 2002 (fax valuing a company's stock); January 31, 2003 (fax requesting an execution of engagement letters and confirming a discussion regarding valuations); May 20, 2003 (emails sent concerning draft valuations); June 13, 2003 (fax attaching wiring instructions for payment for valuations); and June 25, 2003 (fax attaching invoices for payment of valuations).  (Israel Decl. Ex. 1 ¶¶ 19, 23, 28 and p. 19).  Additionally, Lorcom cites an article in the South Florida Business Journal which states: "receiver for a failed New York-based hedge fund manager is seeking more than $1

13

billion in damages from the funds' principals and a list of advisers that includes several South Floridians." (Israel Decl. Ex. 6.) Despite the indictment's mention of Barbarosh's five electronic contacts with New York in connection with this unrelated criminal case, there is nothing to suggest that any of the corporations with whom Barbarosh was allegedly involved are New York domiciliaries, or that injury was felt in New York. As a result, this evidence does not establish that Barbarosh was "doing business" in New York in the instant action.

Lorcom offers other evidence (Israel Decl. Ex. 8) that Barbarosh serves as an officer or board member in companies that have numerous relationships with public companies throughout the United States, if not the world. Namely, the defendant is a member of High Tech Venture Capital, Inc., a Canadian company (Israel Decl. Ex. 9); representative of Workforce Systems Corp., a publicly traded Tennessee company (Israel Decl. Ex. 10); partner in New Jersey-based Pine Projects LLC (Israel Decl. Ex. 3); director of DCC Compact Classic, a publicly traded California company; and CEO of Empire Global M & A Services, LLC. (Israel Decl. Ex. 16.) Aside from the description provided above, there are no further descriptions or allegations of the defendant's relationship with these companies. None of these

companies are alleged to be New York corporations or to be conducting business in New York.[10]

The activities highlighted by counter-plaintiff Lorcom – taken individually and as a whole – do not establish "continuous, permanent and substantial" activity necessary for a finding that Barbarosh was "doing business" in New York. In the absence of evidence that Barbarosh owned property or bank accounts, maintained an office, or had agents or employees in New York, the court lacks jurisdiction on the basis of N.Y.C.P.L.R. § 301.

## B. New York C.P.L.R. § 302(a)(1)[11]

Pursuant to N.Y.C.P.L.R. § 302(a)(1) a New York court may exercise personal jurisdiction over a non-domiciliary "who in person or through an agent. . .transacts any business within the state or contracts anywhere to supply goods or services in the state." To determine if the statute is satisfied, the court analyzes (1) whether the defendant 'transacts any business' in New York, and, if so, (2) whether the cause of action 'aris[es]

---

[10] Counter-plaintiff Lorcom also alleges in its brief that Barbarosh was educated in New York; however, even if this had bearing on whether he was "doing business," Lorcom's own exhibits disprove this assertion. (Israel Decl. Ex. 7.)

[11] In its brief, Lorcom cites § 302(a)(1), but the statutory language it refers to is actually from § 302(a)(3)(ii). However, the case law Lorcom cites refers to § 302(a)(1). As a result, each of these sections of the long arm statute will be addressed.

from' such a business transaction.  _Best Van Lines, Inc. v._

_Walker,_ 490 F.3d 239, 246 (2d Cir. 2007) (citing _Deutsche Bank_

_Sec., Inc. v. Montana Bd. of Invs_., 7 N.Y.3d 65, 71 (2006)).

### (1) Transaction of Business in New York

With regard to whether a defendant "transacts

business" in the state pursuant to the long-arm statute, the New

York Court of Appeals looks to the "totality of the

circumstances" to determine if the defendant has "purposefully

avail[ed] itself of the privilege of conducting activities

within [New York]." _Ehrenfeld v. Bin Mahfouz_, 9 N.Y.3d 501, 508

(2007) _answer to certified question conformed to by_ 489 F.3d

542, 545 (2d Cir. 2007) (citing _McKee Elec. Co. v. Rauland-Borg_

_Corp._, 20 N.Y.2d 377, 382, (1967) (quoting _Hanson v. Denckla_,

357 U.S. 235, 253 (1958))).  The Second Circuit examines four

criteria to determine if "purposeful availment" is established,

and therefore, the defendant "transacts business" in New York:

i.    whether the defendant has an on-going contractual
      relationship with a New York corporation;
ii.   whether the contract with a New York corporation
      was negotiated or executed in New York and
      whether, after executing a contract with a New
      York business, the defendant has visited New York
      for the purpose of meeting with parties to the
      contract regarding the relationship;
iii.  what the choice-of-law clause is in any such
      contract; and
iv.   whether the contract requires [defendant] to send
      notices and payments into the forum state or
      subjects them to supervision by the corporation
      in the forum state.

Sunward Elecs., Inc. v. McDonald, 362 F.3d 17, 22 (2d Cir. 2004)

(citing Agency Rent A Car Sys., Inc. v. Grand Rent A Car Corp.,

98 F.3d 25, 29 (2d Cir.1996)).  Each of these factors is

discussed below.

### (i) Whether the Defendant has an Ongoing Contractual Relationship with a New York Corporation

The first of the Second Circuit's criteria is whether

the defendant has an ongoing contractual relationship with a New

York corporation.  For the purposes of jurisdiction, a "New York

corporation" is one that is incorporated in New York.  Cf. N.Y.

Bus. Corp. L. § 304(b).  The contractual relationships alleged by

Lorcom are a letter agreement between Lorcom and the Aaron

Group, the draft letter of intent between Lorcom and  "X

CORPORATION," drafted by Barbarosh, but never executed by any

party, and the promissory note, originally executed between

Weinstein and Lorcom.  The record before the court reflects only

one corporation with which Barbarosh could have an ongoing

contractual relationship: Lorcom.  Lorcom is not a New York

corporation; therefore, whatever ongoing contractual

relationship Barbarosh might have had with Lorcom cannot satisfy

this first criterion.  Lorcom has not alleged, nor proffered

evidence that it is, in fact, a "New York corporation."  Indeed,

third party plaintiff Lorcom is a Delaware corporation and

denies the allegation in Walden's complaint that Lorcom is "a

New York corporation with its principal place of business located in the County of Kings, State of New York." (Walden Compl. ¶ 2; Lorcom Ans. ¶ 2.) (See also N.Y. Dept. of State Div. of Corp. web site, http://appsext8.dos.state.ny.us/corp_public/corpsearch.entity_search_entry (enter "Lorcom" in "Entity Name" field; click "Search the Database"; click on "LORCOM TECHNOLOGIES INC.")(designating Lorcom as a foreign corporation).) Instead, Lorcom states in its Answer that it "previously had a place of business in Kings County[,] New York." (Lorcom Ans. ¶ 2.)

Because the only alleged contracts between Barbarosh and a corporation are with Lorcom, and Lorcom fails to establish that it is a New York corporation, Lorcom has not made a prima facie showing that Barbarosh had a contractual relationship with a New York corporation.

**(ii) Negotiation, Execution and Maintenance of the Contract in New York**

In failing to show that Barbarosh had a contractual relationship with a New York corporation, Lorcom necessarily fails to make a showing of the second criterion: whether any contract with a New York corporation was negotiated, executed, and maintained in New York. Even if the draft letter of intent between Lorcom and "X CORPORATION" qualifies, it was never executed as a binding contract and therefore not "maintained."

Similarly, the April 2002 letter agreement entered into between Lorcom and the Aaron Group did not involve a New York corporation and was not "maintained" as the money paid by Lorcom was refunded.

### (iii)    Choice-of-law Clause

The third factor considered by the Second Circuit, is whether a choice-of-law clause in any contract is for New York law.  A choice of law clause, does not, as a matter of law, constitute a voluntary submission to personal jurisdiction, but it is an important factor in the N.Y.C.P.L.R. § 302(a)(1) "business transaction" analysis.  CutCo Indus., Inc. v. Naughton, 806 F.2d 361, 366-367 (2d Cir. 1986); see also Agency Rent A Car System, Inc., 98 F.3d at 30 (the court must weigh a New York choice-of-law clause as a significant factor, though not dispositive of the business transaction analysis).  Again, because no such contract with a New York corporation is alleged, Lorcom necessarily fails to establish this criterion.  It is noted that the choice-of-law clause in the original promissory note between Lorcom and Weinstein designates New York, and the promissory note between Lorcom and Weinstein is the subject of the primary cause of action.[12]  As a result, this factor weighs

---

[12]    Subsequent assignments of the promissory note have a Florida choice of law clause, however, they also state that terms of the assignments and the original promissory note that

slightly in Lorcom's favor, but absent allegations showing any

of the other criterion, and considering that it is not alleged

that Barbarosh himself participated in the negotiation of the

original note, and that the note was assigned by Weinstein, a

New Jersey resident (Weinstein Ans. ¶ 3), it cannot support a

finding of "business transactions" for purposes of jurisdiction.

### (iv) Contractual Requirement that Defendant Send Notices into New York

The final factor requires the court to determine

whether any contract either (1) requires the defendant to send

notices and payments into the forum state or (2) subjects the

defendant to supervision by a corporation in the forum state.

Sea Tow Services Intern Inc. v. Pontin, 472 F. Supp. 2d 349,

358-59 (E.D.N.Y. 2007). Neither the April 2002 letter agreement

nor the promissory note requires periodic payments to Lorcom,

whether in New York or elsewhere. Lorcom is a Delaware

corporation and the pleadings and accompanying affidavits do not

establish that Barbarosh would have made any payments to Lorcom

in New York or that Lorcom was supervising Barbarosh from New

York. As a result, this factor is not satisfied.

---

conflict should be interpreted in the promissory note's favor.
(Promissory Note Assignment to Stenton Leigh Bus. ¶¶ 7, 13.)

**(v)   Other Factors**

The Second Circuit notes that the enumerated factors are not necessarily exhaustive of what might be considered when determining whether a defendant "transacts business" in New York.  Sunward, 362 F.3d at 23.  Lorcom highlights several other factors, discussed in Part (A), above, in the context of the "doing business" standard, that might meet the threshold.  Even if other factors met the standard of "transacting business," they still cannot be a basis of jurisdiction because the instant cause of action does not "arise from" these transactions.

**2) Claim "Arising from" N.Y. Business Transactions**

"Essential to the maintenance of a suit against a non-domiciliary under N.Y.C.P.L.R. § 302(a)(1) is the existence of some articulable nexus between the business transacted and the cause of action sued upon."  McGowan v. Smith, 52 N.Y.2d 268, 272 (N.Y. 1981).  In other words, there must be a "substantial relationship" between the cause of action and the business transacted in the state.  Id. at 272-73.  The Second Circuit has interpreted the "substantial relationship" language to mean that there must be a direct relation between the cause of action and the business transacted.  Beacon Enterprises, Inc. v. Menzies, 715 F.2d 757, 764-65.  The Second Circuit engages in an analysis akin to a "but for" causal analysis that

hypothesizes whether the action sued upon would have occurred if the defendant's actions within the state were absent. If the action would still lie, the cause of action does not "arise from" the business transacted in New York. Beacon, 715 F.2d at 765; McGowan, 52 N.Y.2d at 273.

In the instant case, the primary cause of action arises from the promissory note, on which Lorcom allegedly owes money – not the letter of intent. The promissory note was negotiated between Lorcom and Weinstein and assigned to Barbarosh by Weinstein, and subsequently reassigned by Barbarosh to plaintiff Walden. Because Weinstein is a New Jersey resident, Lorcom is a Delaware corporation, and Barbarosh and Walden are Florida residents, the assignment was a business transaction outside of New York. As such, even if Barbarosh's alleged business transactions in New York were absent, the cause of action would still lie. Therefore, jurisdiction pursuant to § 302(a)(1) is inappropriate.

Lorcom's action against Barbarosh also allegedly arises from an agreement between the Aaron Group and Lorcom, entered into on April 2, 2002. Pursuant to this agreement, Lorcom advanced funds to members of the Aaron Group (Doiban Decl. ¶ 10), including Barbarosh. However, there are no allegations that this transaction arose from any of the purported business transacted by Barbarosh in New York.

## C. **New York C.P.L.R. § 302(a)(3)(i) and (ii)**

Pursuant to N.Y.C.P.L.R. § 302(a)(3) "a court may exercise personal jurisdiction over any non-domiciliary, or his executor or administrator, who in person or through an agent: commits a tortious act without the state causing injury to person or property within the state" if the non-domiciliary

> (i) regularly does or solicits business, or engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed or services rendered, in the state, or
> (ii) expects or should reasonably expect the act to have consequences in the state and derives substantial revenue from interstate or international commerce.

N.Y.C.P.L.R. § 302(a)(3)(i)-(ii). As a threshold matter, for jurisdiction pursuant to N.Y.C.P.L.R. § 302(a)(3), the plaintiff must allege facts: (1) stating a colorable cause of action in tort and (2) showing injury was caused in New York. Bank Brussels Lambert v. Fiddler Gonzalez & Rodriguez, 305 F.3d 120, 125-27 (2d Cir. 2002). The inquiry into whether the first requirement is satisfied is at the "preliminary stage of jurisdiction, distinct from an inquiry into the ultimate liability on the merits." Bank Brussels, 305 F.3d at 125. Lorcom's counterclaim and third party complaint alleges two tort

violations: Counts I and II – common law fraud and conversion. In support of these claims, Lorcom's complaint alleges that Barbarosh was part of the Aaron Group that fraudulently obtained monies from Lorcom. The court assumes, for purposes of this motion, that these allegations support a colorable cause of action in tort.

To determine whether the second requirement, that the injury was caused in New York, is satisfied, the Second Circuit applies the "situs-of-the-injury" test which asks where the original event that caused the injury was located. The location of the "original event" is distinguished from the location of the initial tort as well as the location of the final economic injury. Bank Brussels I, 171 F.3d at 791 (2d Cir. 1999). Lorcom alleges economic injury because Barbarosh was part of the Aaron Group which received funds from Lorcom pursuant to an agreement on April 2, 2002. (Lorcom Ans. ¶¶ 26-34.) In connection with this transaction, $425,000 was advanced to Aaron Group members, $100,000 of which was advanced to Barbarosh's company, and $100,000 of which was advanced to Barbarosh. (Lorcom Ans. ¶ 26.) Four-hundred thousand dollars were subsequently returned. Lorcom seeks $15,000 of the $25,000 that was not returned, conceding that $10,000 was a non-refundable

deposit. (Doiban Decl. ¶¶ 9-13.)[13] Even if Lorcom was injured in the amount of $15,000 (Doiban Decl. ¶ 24), this injury is not a result of money advanced to Barbarosh. In fact, it is not even a result of money advanced to Barbarosh's company. The money advanced to Barbarosh and his company pursuant to the letter agreement with the Aaron Group was returned "in the same way the money was tendered." (Doiban Decl. ¶ 13.) Furthermore, there are no allegations that the injury was first felt in New York. Lorcom asserts in its opposition brief that Barbarosh is affiliated with a group that made false promises and misleading assertions to Lorcom in New York, and the disbursement of funds from Lorcom to the Aaron Group was from New York. However, Lorcom has made no factual allegations in the complaint and the record is silent about where these acts took place. Even assuming that Lorcom is a resident of New York and was injured, residence of an injured party in New York is insufficient to satisfy the "injury within the state" requirement. McGowan, 52 N.Y.2d at 274.

In failing to make a prima facie showing that the torts alleged caused injury in New York pursuant to N.Y.C.P.L.R.

---

[13] Arguably, the entire $25,000 was non-refundable. The April 2002 letter agreement indicates that $25,000 was non-refundable assuming that a letter of intent was signed, which it never was. (Doiban Decl. Ex. 4.) Therefore, Lorcom was not injured as a result of the conspiracy in which Barbarosh allegedly was affiliated.

§ 302(a)(3), long arm jurisdiction is inappropriate under this section as well. [14]

### III. <u>CONCLUSION</u>

Because jurisdiction pursuant to N.Y.C.P.L.R. §§ 301-302 is improper, the court does not to reach the question of due process. Third party defendant and cross claim defendant Barbarosh's motion to dismiss for lack of personal jurisdiction is granted.

The parties are ordered to participate in a telephone status conference on April 2, 2009 at 12:00 p.m. Plaintiff Walden shall initiate the call with all parties.

**SO ORDERED**
DATED: March 24, 2009
      Brooklyn, New York

      /s/
Kiyo A. Matsumoto
United States District Judge

---

[14] The court notes that even if injury in New York is presumed, Lorcom has not alleged facts to show that Barbarosh derives substantial revenue from goods used or consumed or services rendered in the state. Nothing in the record reflects Barbarosh's revenue generally. Furthermore, the court has already determined that evidence of Barbarosh's business activity in New York is limited to the conduct alleged in this action, and the speaking engagement he had. This is far from "regular" or "persistent" activity. Therefore, N.Y.C.P.L.R. § 302(a)(3)(i) is not satisfied. Additionally, because there is nothing in the record or allegations regarding Barbarosh's revenue in general, N.Y.C.P.L.R. § 302(a)(3)(ii) is not satisfied.